STATE OF VERMONT

ENVIRONMENTAL COURT

}
In re: Yates Subdivision Application      }          Docket No. 149-6-06 Vtec
      (Appeal of Stutler)                 }
                                          }

Decision and Order

Appellant Joyce Stutler appealed from a decision of the Development Review Board (DRB) of the City of St. Albans issued on May 25, 2006, approving an application for a two-lot minor subdivision of Appellee-Applicants Randolph and Cathy Yates' property at 255 North Main Street. Appellant is represented by Timothy G. Hurlbut, Esq.; Appellee-Applicants are represented by Brian P. Hehir, Esq.; and the City of St. Albans is represented by Robert E. Farrar, Esq.

After Questions 2, 4, 7 , and 9, and portions of Questions 1 and 3 were resolved by summary judgment, an evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. A site visit was taken prior to the hearing with the parties and their representatives. At trial Appellee-Applicants showed that the site plan is based on a field survey as required by §902(B)(1)(a); accordingly, judgment as a matter of law is hereby granted on Questions 5, 6, and 8, as provided in the summary judgment order at p. 7.

As explained in the summary judgment decision, the Environmental Court is required by statute to apply the substantive standards that were applicable before the DRB, 10 V.S.A. 8504(h), and to consider each issue in the Statement of Questions de novo. V.R.E.C.P. 5(g). All that was before the DRB was the issue of approval of the subdivision itself, not any application for a building permit for a specific house location or any curb cut

1

for a specific driveway location; therefore that is all that is before the Court in this de novo appeal.

The trial on the merits proceeded on Question 10, and on the remaining portions of Questions 1 and 3, as to the historic building and as to snow removal and parking on Stanley Court. The parties were given the opportunity to submit written memoranda[1] and requests for findings. Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows. To the extent any proposed findings of fact and conclusions of law are incorporated in this decision, they are granted; otherwise, they are denied.

As more fully described in the summary judgment decision, Appellee-Applicants' .78-acre parcel is located with frontage on Route 7 at the address of 255 North Main Street (Route 7); it extends easterly to and has frontage on the end of Stanley Court. Stanley Court is a quiet dead-end street maintained by the City and having an irregular cul-de-sac at its end.

The property contains an existing historic building now in use as a four-unit multi-family dwelling, fronting on North Main Street. The property has two curb cuts on North Main Street, one on each side of the building, giving access by driveways to a parking area in the rear of the existing building. The portion of the property containing the multi-family building is located in the B2 Transitional Business zoning district. The remainder of the property, extending easterly, is undeveloped and is located in the Low Density Residential zoning district. The property is served by municipal water supply and sewage disposal lines extending easterly from Main Street along the southerly side of the property.

---

[1] The parties were also given the opportunity to submit responsive memoranda but did not do so.

Appellee-Applicants propose to divide the property into two resulting lots, with Lot 1 having an area of 21,080 square feet and fronting on North Main Street, and Lot 2 having an area of 13,031 square feet and fronting on the enlarged area at the end of Stanley Court, so that the rear yards of both proposed lots will adjoin at their common boundary.

Lot 1 is proposed to consist of the existing four-unit multi-family building, its driveways and parking lot, and is located entirely within the B2 Transitional Business zoning district, except for an approximately 6' 3"-wide strip at its easterly end located in the Low Density Residential zoning district. No site work, excavation or filling is proposed for Lot 1.

The building on Lot 1 is listed on the National Register of Historic Places as "Hathaway's Tavern," also known as the "Hathaway-Hoyt House." It was built originally as a tavern in 1793, serving the principal route along the east side of Lake Champlain to Canada, and was converted to a private dwelling by 1805. The building is reputed to have been an Underground Railroad station where fugitives were hidden prior to the Civil War, and to have access to a tunnel or tunnels used as hiding places during that period. Even if any such tunnel exists, no evidence was presented to suggest that any tunnel extends onto the area proposed as Lot 2.

Lot 2 is located entirely within the Low Density Residential District and is proposed to become a building lot for a new single-family residence and attached garage, although no design for such buildings and no application for a building permit or for a curb cut approval has yet been submitted to the appropriate city department. The site plan shows the proposed lot lines with the "approximate dimensions and suggested locations of buildings" as required by § 902(C)(2)(p) of the Land Development Regulations of the City of St. Albans (Regulations); however, the labeling of those suggested locations does not reflect that regulation provision. That is, the site plan shows the footprint of a suggested location for a house labeled as "proposed single family residence" rather than as

3

"suggested location;" the site plan shows the footprint of a suggested location for an apparent attached garage house without a label; and the site plan shows the footprint of a suggested location for a driveway labeled as "proposed drive" although no curb cut permit has been applied for in that location.

Although the proposed site plan shows site work proposed to raise Lot 2 to an elevation at the house site of 505 feet above sea level, approximately ten feet above the elevation at the rear line of Lot 1, at trial the project engineer clarified that such site work was not now proposed and would depend upon the design of the house not yet proposed for the site. For example, if a house were to be designed on several levels or with a walk-out basement towards the west, the site work as shown on the plan would not be required. Access to Lot 2 is proposed to be from the end of Stanley Court, but the shaded area labeled on the site plan as "proposed driveway" has not been proposed as the actual location of a curb cut for access to Lot 2.

Appellant's property adjoins the northerly side of the enlarged area or cul-de-sac at the westerly end of Stanley Court. Appellant's southerly property line adjoins the northerly property line of Lot 2 by approximately 15.76 feet at the northeast corner of Lot 2. The placement of the paved area of Stanley Court within the City's right-of-way is shown as a shaded area on the site plan. The Stanley Court cul-de-sac is unusual in that the cul-de-sac area is rectangular rather than rounded in shape, and in that the Stanley Court street enters the cul-de-sac along the southerly edge of the cul-de-sac rather than centered on the cul-de-sac area. That is, a large proportion of the rectangular cul-de-sac area extends northerly of the traveled lanes of the street entering it, towards Appellant's property, and none of the cul-de-sac area extends southerly of the traveled lanes of the street entering it.

The effect of these two peculiarities of the Stanley Court cul-de-sac has been to cause problems with snow removal in the winter, in particular that snow is not plowed from the

4

street all the way to the end of Appellant's driveway[2], and that snow has been plowed straight back onto the property of proposed Lot 2 into a heap that may block Appellant's full use of her driveway. No evidence was presented that either the City or the residents have attempted to place markers at the edges of the pavement or at the corners of the Stutler, Manahan, or Pigeon driveways, to assist the plow operators in recognizing what areas should be plowed, due to the odd configuration of the cul-de-sac. Once Lot 2 is developed with a house, the City intends to remove snow from the end of Stanley Court by use of a backhoe and dump truck, as the City does from its other dead-end streets; that is, the City Director of Public Works recognizes that it will lose the opportunity to plow snow onto proposed Lot 2.

Questions 1 and 3

As the building on Lot 1 is listed on the National Register of Historic Buildings, Regulations §801(E) applies (through §901(A)). Section 801(E) requires, "for developments adjacent to" listed buildings, that "special provision shall be given to preserve the character of the historic buildings and to encourage compatibility of new development with the historic architectural qualities." As the term "development" includes a subdivision even if nothing is proposed for construction, this section is applicable to the present subdivision proposal. Regulations §202.

The proposal before the Court only proposes the subdivision of the existing property into two lots. As it does not propose any construction or site work at all, no special provision is necessary with regard to Lot 2 in order to "preserve the character" of the

---

[2] Appellant also has complaints that the City does not come sufficiently quickly to plow Stanley Court during a snowstorm, and that snow ends up in her driveway that she must arrange privately to have cleared. These complaints are beyond the jurisdiction of this Court in this appeal.

historic building on Lot 1. In any event, as appears from the photographs in evidence, the existing parking lot for the building on Lot 1 is located between Lot 2 and the rearmost section of the historic building on Lot 1. Moreover, the rear face of the rearmost section of the historic building has only one window facing eastwards, in its attic. A large deciduous tree on Lot 1 partially screens the view from that window over the parking lot towards Lot 2. Therefore the subdivision of the property into the two proposed lots meets the requirements of §801(E).

If and when a new single-family house is proposed for Lot 2, its design and landscaping may have to be reviewed under §801(E) to assure that it also preserves the character of the historic building on Lot 1 and to encourage its compatibility with the historic architectural qualities of that building. However, the question of the design or landscaping of any future house is not before the Court in the present appeal.


Question 10

Appellant's primary concern is with the functionality of cul-de-sac for the neighboring driveways and the potential for conflict with any driveway that may be proposed for Lot 2, especially with regard to problems occurring during snow removal. No layout, design, or location of a single-family house, garage, driveway or curb cut has yet been proposed for Lot 2. The proposed subdivision in and of itself will not adversely affect either the City's responsibilities for or its ability to remove snow from the Stanley Court cul-de-sac, nor will it interfere with the neighboring residents' present ability to maneuver their vehicles safely into or out of their respective driveways.

If and when a single-family residence is proposed for Lot 2, of course, it may be necessary to design a driveway for Lot 2 so as to allow vehicles to be turned around on Lot 2 to exit the property forwards rather than backing up, and it may be necessary to place the driveway curb cut onto Stanley Court in a different location along the property's frontage

6

than is shown on the site plan, to avoid conflicts with Appellant's use of her driveway. Those applications have not yet been made and are not before the Court[3] in this appeal.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicants' subdivision is APPROVED. On or before August 30, 2007, Appellee-Applicant shall produce a site plan consistent with this decision (that is, with the label for the suggested footprint of the house labeled as "suggested" rather than "proposed;" with a label provided for the suggested footprint of the garage if that is what it is; with a notation that the site work and changed elevations shown on the plan are also merely "suggested;" and with the "proposed drive" (both the shaded indication of paving and the label) deleted), approved as to form by the other parties, so that the subdivision as approved by the Court can be appended to a judgment order and can be filed in the City's zoning and planning files for this property.

Dated at Berlin, Vermont, this 22nd day of August, 2007.

_____
Merideth Wright
Environmental Judge

---

[3] We note that in most municipalities, curb cut applications are governed by a separate ordinance from the zoning and subdivision regulations. If curb cut approvals are not issued by or appealed to the DRB, then any subsequent appeal is to the superior court rather than to this court.